**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Oscar Contreras Aguilar** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:19cv1634 (AJT/MSN)** |
| | ) | |
| **Phyllis Back, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION & ORDER

By Order dated June 2, 2021, the Court granted in part defendants' motion to dismiss the amended complaint filed pro se by Oscar Contreras Aguilar, a federal inmate temporarily housed in Virginia custody at Northern Neck Regional Jail (NNRJ) during the periods at issue in this lawsuit. [Doc. No. 43]. In doing so the Court construed the amended complaint only as raising claims that defendants, officials at NNRJ, retaliated against him for engaging in protected First Amendment activity and conspired to violate his constitutional rights. [Doc. No. 42]. The Court granted the motion to dismiss with respect to the conspiracy claims and allowed the retaliation claims to proceed. [Id.]. Afterwards, Aguilar wrote a letter to the Court in which he contests the Court's construction of the amended complaint in the motion to dismiss, asserting that he intended to bring four additional claims that the Court failed to address. [Doc. No. 53]. The Court construes this letter as a motion to reconsider. See Fed. R. Civ. P. 54(b). Because Aguilar has identified a clear error in the Court's construction of the amended complaint, the motion to reconsider will be granted. Even so, because the additional claims fail to state a claim for relief, the Court's June 2, 2021 Order will be amended through this Order to dismiss those claims.

## I. Plaintiff's Motion to Reconsider

In Aguilar's letter he directs the Court to the amended complaint, in particular, to the section entitled "Legal Claims," and urges that he has always intended to pursue claims for "constitutionally inadequate conditions of confinement, failure to protect, unlawful strip search, and retaliation," which are listed in that section. [Doc. No. 53]. The Court construes Aguilar's pro se letter as a motion to reconsider under Federal Rule of Civil Procedure 54(b), which allows district courts to reconsider interlocutory orders.

Aguilar has persuaded the Court to reconsider its Order granting defendants' motion to dismiss. An interlocutory order may be revised, at the Court's discretion, only in three circumstances: when there is "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." See U.S. Tobacco Coop. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018) (internal quotation marks and citation omitted). Only the third category is relevant here. As relevant here, "[m]anifest injustice occurs where the court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension." South Carolina v. United States, 232 F. Supp. 3d 785, 799 (D.S.C. 2017) (internal quotation marks and citations omitted).

Here, when reading Aguilar's response opposing defendants' motion to dismiss, the Court misapprehended the claims Aguilar seeks to pursue in this lawsuit. For that reason, the Court will grant Aguilar's motion to reconsider and, accordingly, re-evaluate defendants' motion to dismiss with respect to the following four additional claims listed in the amended complaint: (1) Major Phyllis Back authorized an unlawful strip search; (2) Major Back failed to protect Aguilar from harm by denying his requests to be placed in protective custody; (3) Major Back acted with deliberate indifference to Aguilar's significant weight loss; and (4) Sergeant Rebecca

Berry, Lieutenant Jason Newsome, Captain Jonathan English, and Major Back provided
unconstitutional conditions of confinement during his stay in administrative segregation. See
[Doc. No. 14].[1]

## II. Defendants' Motion to Dismiss

### A) Claim (1) – Unlawful Strip Search

In the amended complaint Aguilar alleges that sometime in June 2019, Major Back
ordered guards to strip search him and to search his property as he was being transferred from F-
Pod to D-Pod in NNRJ. [Amended Compl. ¶¶ 19, 21]. Aguilar alleges that Back ordered the
searches because Aguilar had been helping other inmates file lawsuits. [Id. ¶ 21]. Aguilar further
alleges that no contraband was found during the search. [Id.].

Defendants argue that the amended complaint fails to state a claim for relief because
there is no allegation that the search was conducted unreasonably.

The Court agrees. Prisoners maintain some Fourth Amendment rights while incarcerated,
and searches of pretrial detainees still must be conducted reasonably. See Bell v. Wolfish, 441
U.S. 520, 558, 560 (1979). Determining whether a particular search is reasonable "requires a
balancing of the need for the particular search against the invasion of personal rights that the
search entails," by considering "the scope of the particular intrusion, the manner in which it is
conducted, the justification for initiating it, and the place in which is it conducted." Id. at 559.
The amended complaint contains no allegations about the manner in which the searches—of
Aguilar's body and property—were conducted, let alone that they were conducted unreasonably.
Therefore, the Fourth Amendment claim against Major Back will be dismissed.

---

[1] The Court dismissed all the claims against defendant superintendent Ted Hull because the
complaint failed to allege that he took any direct action to violate Aguilar's constitutional rights
or to allege facts demonstrating that he could be held liable in a supervisory capacity. [Doc.
Nos. 42, 43]. Aguilar offers no reason to revisit or disturb that conclusion.

*B) Claim (2) – Failure to Protect*

The amended complaint next brings a claim against Major Back for failure to protect. In particular Aguilar alleges that in June 2019, Back transferred him from F-pod to D-pod even though she knew he had previously been in "an altercation (fight) with other inmates in D-Pod where a shank was involved back in April 2019" and that he "had problems (beef) with multiple inmates in D-pod." [Amended Compl. ¶ 19]. He further alleges that on July 13, 2019, "D.C. gang members" unsuccessfully tried to stab him with a shank and ultimately threw him down the stairs, and he was caught by another inmate before hitting the ground. [Id. ¶ 23]. Aguilar adds that he "ended up stabbing the D.C. gang member with the D.C. gang member's own shank." [Id.]. A few days later, Aguilar alleges, he was moved to O-pod.

Defendants argue that the failure-to-protect claim should be dismissed because the amended complaint does not allege that Aguilar suffered an injury as a result of Major Back's alleged conduct.

Defendants, again, are correct. Prison officials, indeed, must "take reasonable measures to guarantee the safety of the inmates," including "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). To hold a prison official accountable under a theory of failure to protect, an inmate first must allege a "sufficiently serious" deprivation, amounting to "a serious or significant physical or emotional injury resulting from the challenged conditions." Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (internal quotation marks and citations omitted). Second, an inmate must allege that the defendant prison official acted with deliberate indifference, by alleging facts demonstrating that the official "kn[e]w the plaintiff inmate face[d]

a serious danger to his safety and [the officer] could avert the danger easily yet [he] fail[ed] to do so." Id. (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)). Aguilar's claim fails at the first inquiry because he has not alleged that he suffered a serious physical or emotional harm as a consequence of his transfer to D-pod in June 2019, including from the alleged attack on July 19, 2019. The failure-to-protect claim therefore will be dismissed.

### C) Claim (3) – Deliberate Indifference

Next, in one sentence in a paragraph dedicated to Aguilar's retaliation and conspiracy claims, Aguilar also claims that Major Back was "being deliberately indifferent to plaintiff's significant loss of weight." [Amended Compl. ¶ 75]. Defendants did not address this fleeting claim in the motion to dismiss, nor did the Court discuss it its screening Order. See [Dkt. No. 18]. Still, the Court may screen claims in the complaint "as soon as practicable," and it will do so now. See 28 U.S.C. § 1915A.

Aguilar's claim is based on alleged weight loss he experienced at NNRJ resulting from, in his view, "the lack of nutritionally adequate food at NNRJ" and excessive canteen prices. [Amended Compl. ¶ 35]. Aguilar first alleges that, after a transfer to federal custody in August 2019, he returned to NNRJ on October 23, 2019 [Amended Compl. ¶¶ 26, 28]. During a weight check the first week of November, Aguilar alleges, he weighed 180 pounds, a weight he describes as his "average weight." [Id. ¶¶ 29, 35]. He further alleges that by the first week of December, he had lost 15 pounds, weighing only 165 pounds. [Id. ¶ 31]. Aguilar alleges that he left NNRJ for a two-month period between December 20, 2019 and February 10, 2020, and weighed 182 pounds when he returned to NNRJ, but his weight dropped to 164 pounds by the end of February "due to the lack of adequate portions of food." [Id. ¶¶ 33–34]. Aguilar further

5

alleges that by the end of March 2020, shortly before filing the amended complaint, he weighed only 160 pounds while standing 5 feet and 11 inches tall. [Id. ¶ 35].

These allegations do not support a claim against Major Back for deliberate indifference to a serious medical need. At bottom to state a § 1983 claim a complaint must allege that the defendant had personal knowledge of, and involvement in, the alleged violations of the plaintiff's constitutional rights. De'Lonta v. Fulmore, 745 F. Supp. 2d 687, 690–91 (E.D. Va. 2010). Here, the complaint does not explain at all how Major Back had any knowledge of, or involvement in, the alleged reasons underlying Aguilar's weight loss, such as setting canteen prices or nutrition standards and portion sizes of meals. Moreover, for a nonmedical jail official like Back to be held accountable for deliberate indifference to a serious medical need, the complaint must allege that the officer "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[ed] with the treatment once prescribed." Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir. 2009) (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). The complaint makes no qualifying allegation. Therefore, the deliberate indifference claim against Major Back must be dismissed.

*D) Claim (4) – Unconstitutional Conditions of Confinement*

Finally, the amended complaint also brings a claim that Sergeant Berry, Lieutenant Newsome, Captain English, and Major Back provided Aguilar with unconstitutional conditions of confinement while he was housed in administrative segregation. He principally alleges that the conditions he endured were unlawful because they were nearly the same as for inmates housed in disciplinary segregation. In particular, he alleges that he only was allowed outside of his cell for one hour daily and further, that English ordered that he be handcuffed and shackled whenever he

6

moved around the jail and that he not be permitted to have razors—restrictions Aguilar contends do not apply to other inmates in administrative segregation.

Defendants argue that the complaint fails to state a claim for relief, citing to Sandin v. Conner, 515 U.S. 472 (1995), for the proposition that Aguilar must, but has not, alleged that his placement in administrative segregation amounts to an atypical or significant hardship in relation to the ordinary incidents of prison life.

The Court first observes that defendants' reliance of Sandin is misplaced because its "rationale for limitations on prisoner rights . . . does not apply to a pretrial detainee" like Aguilar. Williamson v. Stirling, 912 F.3d 154, 183–84 (4th Cir. 2018). Instead, to state a claim for unconstitutional pretrial conditions of confinement, a complaint must allege facts demonstrating that the conditions were imposed punitively, either because they were "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." Id. at 174 (internal quotation marks and citation omitted). And even when a condition is imposed for administrative or disciplinary reasons, "the treatment of a pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment that will sustain a substantive due process claim." Id. at 175.

Nevertheless, the Court first concludes that the amended complaint fails to state a claim for relief against Lieutenant Newsome, Major Back, and Sergeant Berry because it does not allege that any of these officers bore responsibility for the conditions Aguilar faced in administrative segregation. As for Captain English, Aguilar asserts that punitive intent may be imputed on him because he imposed more restrictions on Aguilar than other inmates in administrative segregation. That, however, is not an express intent to punish.

7

Defendants next argue that the amended complaint exposes legitimate, nonpunitive

rationales for the added restrictions Aguilar faced in administrative segregation. In particular,

defendants point out that Aguilar's supposed indefinite status in administrative segregation was

imposed only after Aguilar reported to Captain English that he "was feeling 'homicidal'" and

asked to speak with a psychologist. [Amended Compl. ¶ 40]. To be sure, keeping a self-

described "homicidal" inmate restrained when around others and away from razors is legitimate

nonpunitive governmental objective. Indeed, penal institutions have a "legitimate interest in

maintaining the security of its facilities." Matherly v. Andrews, 859 F.3d 264, 279 (4th Cir.

2017) (internal citation omitted). The claim related to the conditions Aguilar faced in

administrative segregation therefore will be dismissed.

Accordingly, it is hereby

ORDERED that plaintiff's letter motion for reconsideration [Doc. No. 53] be and is

GRANTED; and it is further

ORDERED that the Court's June 2, 2021, Order [Doc. No. 43] be and is AMENDED to

reflect that, for the reasons stated in this Order, the four additional claims the Court agreed to

reconsider shall be dismissed from this civil action.

The Clerk is directed to send this Order to plaintiff and to counsel of record for

defendants.

March 17, 2022

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

8